1  David Mannion (Bar No. 288627)
   dmannion@blakeleyllp.com
2  BLAKELEY LLP
3  18500 Von Karman Ave, Suite 530
   Irvine, California 92612
4  Telephone: (949) 260-0611
   Fax: (949) 260-0613
5
6  Attorneys for Plaintiffs Brian Horowitz
   and Creative Outdoor Distributors USA, Inc.
7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10
   BRIAN HOROWITZ and CREATIVE          Case No. 8:17−cv−00432
11 OUTDOOR DISTRIBUTORS USA, INC.,
12                    Plaintiffs,        **COMPLAINT**

13                                        **DEMAND FOR JURY TRIAL**

14 v.

15 YISHUN CHEN, ZHAOSHENG CHEN,
16 and YUE ZHANG,

17                    Defendants.

18

19

20

21

22

23

24

25

26

27

28

1        Plaintiffs Brian Horowitz and Creative Outdoor Distributors USA, Inc.

2   ("Creative" and, together with Horowitz, the "Plaintiffs") for their complaint against

3   defendants Yishun Chen, Zhaosheng Chen, and Yue Zhang a/k/a Alan Zhang (the

4   "Defendants") allege upon personal knowledge with respect to themselves and their

5   own acts, and upon information and belief as to all other matters, as follows:

6   **NATURE OF THE ACTION**

7        1.    This action seeks a declaratory judgment of patent invalidity, correction

8   of inventorship, and damages for violations of the Lanham Act, Cal. Bus. & Prof.

9   Code § 17200, and intentional interference with the Plaintiffs' contracts.

10        2.    The Plaintiffs have patent rights in an extremely popular folding wagon

11   used to transport small items such as garden and beach equipment.  Plaintiff Horowitz

12   is the wagon's inventor and the C.F.O. of co-plaintiff Creative, which sells the wagon

13   under license.

14        3.    Defendants Yishun Chen and Zhaosheng Chen (the "Chens") are

15   competitors of the Plaintiffs and purported patentees of a different and less popular

16   folding wagon.

17        4.    The Chens have misrepresented to the Plaintiffs' licensees and customers

18   that the licensees and customers are infringing the Chens' patents when, in fact, they

19   are selling Horowitz's distinctly different wagon.  Moreover, the Chens' wagon

20   patents are invalid for, among other reasons, obviousness in light of the prior art.

21        5.    Defendant Yue Zhang a/k/a Alan Zhang is a lawyer who aided and

22   abetted the Chens' interference with the Plaintiffs' business relationships.  Zhang sent

23   infringement notices to the Plaintiffs' licensees and customers misrepresenting that

24   they were violating the Chens' patents.

25        6.    Upon being informed of his misrepresentations, Zhang falsely claimed

26   he had sent retraction letters.  He then ignored Plaintiffs' entreaties to resolve this

27   dispute without litigation and continued to assist the Chens in their campaign to

28   bolster sales of their own inferior wagon by intimidating the Plaintiffs' customers.

1

# THE PARTIES

7.      Plaintiff Horowitz is a resident of Mission Viejo, California.

8.      Plaintiff Creative is a Delaware corporation with its principal place of business in Irvine, California.

9.      Defendant Yishun Chen is an individual residing in El Monte, California.

10.     Defendant Zhaosheng Chen is an individual residing in El Monte, California.

11.     Defendant Yue Zhang a/k/a Alan Zhang is an individual residing in Arcadia, California.

# JURISDICTION AND VENUE

12.     The Court has jurisdiction of this action under 28 U.S.C. §§ 1331, 1338, 1367, and 2201.

13.     The Court has personal jurisdiction over the Defendants because they all reside in California.

14.     Venue is proper under 28 U.S.C. § 1391 because the Defendants reside in this District and a substantial part of the events giving rise to the action occurred in this District.

# FACTUAL ALLEGATIONS

**A.      The Parties Hold Patents for Distinctly Different Folding Wagons.**

15.     On March 10, 2015, the United States Patent and Trademark Office (the "PTO") issued Patent No. 8,973,940 (the "'940 Patent") to the Chens for a folding wagon they purportedly invented (the "Chens' '940 Wagon"). The '940 Patent is attached hereto as Exhibit 1.

16.     Around six months later, on September 29, 2015, the PTO issued U.S. Patent No. 9,145,154 (the "Horowitz '154 Patent") to Horowitz for a different folding wagon with distinctly different mechanical functions to the Chens' '940 Wagon (the "Horowitz '154 Wagon"). The Horowitz '154 Patent is attached here to as Exhibit 2.

17.     By way of example only: (1) the Horowitz '154 Wagon has a

2

crisscrossed folding mechanism, whereas the Chens' '940 Wagon has an inverted triangular folding mechanism; (2) the different folding mechanisms mean that, when folded, the sides of the Horowitz '154 Wagon interlock inwards whereas the sides of the Chens' '940 Wagon protrude upwards; (3) when the Chens' '940 Wagon is folded the handle has a stand whereas the handle of the Horowitz '154 Wagon doubles as the stand; and (4) when folded the wheels of the Chens' '940 Wagon have a gap in the middle whereas the wheels of the Horowitz '154 Wagon are flush when folded.

18.     Some of the differences between the two wagons are illustrated in the side-by-side comparison of the Horowitz '154 Patent and the Chens' '940 Patent attached hereto as Exhibit 3.  The redlining on Exhibit 3 has been added for ease of comparison.

19.     The differences between the two wagons mean the Horowitz '154 Wagon occupies less space when folded and sales of the Horowitz '154 Wagon far exceed sales of the Chens' '940 Wagon.

**B.     The Defendants' Unlawful Interference with the Plaintiffs' Business Relationships.**

20.     Horowitz granted Creative a license to manufacture and sell the Horowitz '154 Wagon.

21.     Creative sells the Horowitz '154 Wagon through Amazon, eBay, and other online marketplaces (the "Online Retailers").

22.     Creative also sells the Horowitz '154 Wagon to over a hundred distributors (the "Distributors"), many of whom resell it through the Online Retailers.

23.     In addition, in October 2016 Horowitz granted non-party Ollieroo, Inc. ("Ollieroo") a written license to manufacture and sell the Horowitz '154 Wagon.

24.     Like Creative, Ollieroo sells the Horowitz '154 Wagon through the Online Retailers and other sales channels.

25.     In November 2016, on the cusp of the parties' peak selling season, the Chens contacted the Online Retailers, Creative's Distributors, and Ollieroo and

1 falsely claimed that sales of the Horowitz '154 Wagon infringed the Chens' '940
2 Patent.  A copy of an infringement notice sent to Ollieroo is attached hereto as Exhibit
3 4.

4     26.    These infringement notices were sent in bad faith because the Chens'
5 '940 Wagon is materially different from the Horowitz '154 Wagon, and the Chens
6 were fully aware of the differences between the two.

7     27.    In addition, the infringement notices claimed Ollieroo, Creative's
8 Distributors, and the Online Retailers were infringing the Chens' U.S. Patent No.
9 9,101,206 (the "'206 Patent").  *See*, Exhibit 4 (sample infringement notice.)

10     28.    The Chens' '206 Patent relates to a canopy-wagon.  A copy of the
11 Chens' '206 Patent is attached hereto as Exhibit 5.

12     29.    The Horowitz '154 Wagon has different mechanical functionalities to the
13 wagon covered by the Chens' '206 Patent and and the Chens were fully aware of the
14 differences between the two.  *Compare*, Exhibit 2 (the Horowitz '154 Patent) and
15 Exhibit 5 (the Chens' '206 Patent.)

16     30.    Zhang's infringement notices unequivocally stated that '*[a]fter
17 reviewing your products*, it is certain that your business conduct of manufacturing,
18 marketing and/or selling said products induces the infringement of, and/or contributes
19 to the infringement of my client's aforementioned patents."  *See*, Ex. 4 (emphasis
20 added.)

21     31.    But if Zhang or the Chens had *actually* reviewed the wagons being sold
22 by the Online Retailers, Creative's Distributors, and Ollieroo, they would have seen
23 they were distinctly different from those covered by the Chens' patents identified in
24 Zhang's infringement notices.

25     32.    Moreover, several versions of the Chens' infringement notice (authored
26 by Zhang) asserted the infringement of U.S. Patent No. 8,011,686 (the "'686 Patent.")
27 *See*, Ex. 6 (infringement notice.)

28     33.    However, the Chens previously assigned the '686 Patent to BAM

Brokerage, Inc. ("BAM"), *which is a Horowitz company. See*, Ex. 7 (identifying BAM as the assignee of the '686 Patent.)

34.     In other words, not only did the Defendants assert the infringement of patents for wagons that are distinctly different from the Horowitz '154 Wagon; they asserted the infringement of patents the Chens *did not even own*.

35.     In an effort to conceal their misconduct, the Defendants never sent an infringement notice to Horowitz or Creative – only to the Online Retailers, the Distributors, and Ollieroo.

36.     Rather than protecting their intellectual property rights, the infringement notices were sent by the Defendants to intimidate Ollieroo and Creative's Distributors and increase market share for the Chens' inferior wagon.

37.     Upon receiving the infringement notices, the Plaintiffs were contacted by Ollieroo and several of Creative's Distributors including non-parties Impresa Mistral, LLC, WagonsNMore, Inc., D and H Inc., I Prime Inc., J and B Tools Inc.

38.     Ollieroo and the Distributors complained that the Defendants had threatened them with litigation and that the Online Retailers had blocked their efforts to resell the Horowitz '154 Wagon.

39.     The Plaintiffs immediately contacted Zhang to inform him that Ollieroo and the Distributors had not infringed the Chens' '940 Patent and, in fact, were selling the Horowitz '154 Wagon covered by the Horowitz '154 Patent.

40.     Zhang was also informed that, contrary to the claims in his infringement notices, the Chens did not even own the '686 Patent.

41.     In response, Zhang promised to send retraction letters to all persons to whom he had previously sent infringement notices.

42.     Zhang also provided the Plaintiffs with a retraction letter he claimed had been sent to all such persons.

43.     However, Ollieroo and all the Distributors who had received the infringement notice informed the Plaintiffs that they did not receive any retraction

1  notice from Zhang.

2      44.    Instead, the Chens have continued to send infringement notices to the
3  Online Retailers and Distributors.

4      45.    Most recently, an infringement notice sent by the Chens to Amazon
5  asserted the infringement of U.S. Patent No. 9,085,311 (the "'311 Patent").  *See*,
6  Exhibit 8 (infringement notice.)

7      46.    The Chens' '311 Patent relates to a canopy-wagon.  A copy of the
8  Chens' '311 Patent is attached hereto as Exhibit 9.

9      47.    The Horowitz '154 Wagon has different mechanical functionalities to the
10  wagon covered by the Chens' '311 Patent and and the Chens were fully aware of the
11  differences between the two.  *Compare*, Exhibit 2 (the Horowitz '154 Patent) and
12  Exhibit 9 (the Chens' '311 Patent.)

13      48.    The Defendants' unlawful interference with the Plaintiffs' business
14  relationships has caused the Online Retailers to stop selling the Horowitz '154 Wagon
15  and chilled the Distributors' willingness to buy the Horowitz '154 Wagon from
16  Creative.

17      49.    The Defendants have also impaired Ollieroo's ability to exploit its
18  license to sell the Horowitz '154 Wagon, which in turn undermines Horowitz's ability
19  to charge licensing fees in relation to the Horowitz '154 Patent.

20      **C.    The '686 Patent Should be Corrected to Identify Horowitz as the**
21          **True Inventor.**

22      50.    Horowitz has been designing wagons since 2004, at which time he sold
23  them through BAM.

24      51.    In around 2007 he invented his first folding wagon, which he sold
25  through BAM.

26      52.    In 2008, by happenstance, Horowitz met the Chens for the first time at a
27  vendor pitch to the Sports Chalet sporting goods store.

28      53.    At that time the Chens made folding chairs which they were pitching to

Sports Chalet to sell in its stores.

54.     Prior to meeting Horowitz the Chens had never designed or manufactured any wagons, folding or otherwise.

55.     The Chens told Horowitz they had a factory in China and would be interested in manufacturing Horowitz's wagon.

56.     In 2008 the Chens started manufacturing Horowitz's wagons and became intimately familiar with its design features.

57.     From that time onwards, the Chens embarked on a deliberate scheme to misappropriate Horowitz's wagon designs.

58.     For example, throughout 2008-09, whenever the Chens came to BAM's offices for business meetings they would bypass reception and walk into BAM's warehouse at the rear of the premises, without permission, to view Horowitz's designs.

59.     Each time this occurred Horowitz had to ask the Chens to leave the warehouse yet on subsequent visits they did the same thing.

60.     Then in the fall of 2008, without Horowitz's knowledge or consent, the Chens filed an application for what became the '686 Patent.  A copy of the '686 Patent is attached hereto as Exhibit 10.

61.     The '686 Patent named the Chens as inventors even though the patented invention was actually Horowitz's and the Chens had nothing to do with its invention.

62.     Horowitz subsequently discovered the Chens had patented his wagon design and confronted them.  Fully aware of their misconduct, the Chens assigned the '686 Patent to Horowitz in recognition of the fact he was the true inventor. *See*, Ex. 7.

63.     Horowitz then believed the dispute concerning the inventorship of the '686 Patent had been resolved.  However, in December 2012 the Chens filed a pending state court action asserting that their assignment of the '686 Patent to Horowitz is unenforceable.

64.     Because the Horowitz '154 Wagon is made under the '154 Patent, the

ownership dispute concerning the '686 Patent did not affect Horowitz's business until last year when the Chens started sending infringement notices falsely claiming they owned the '686 Patent and that it was being infringed by sellers of the Horowitz '154 Wagon.  *See*, Ex. 6 (infringement notice).

65.     Accordingly, Horowitz now seeks the correction of the '686 Patent to identify him as the true inventor.

**D.     The Chens' '940 Patent, '206 Patent, and '311 Patent are Invalid.**

66.     Apart from misrepresenting that the Distributors and Ollieroo are infringing the Chens' patents by selling the Horowitz '154 Wagon; the Chens' '940 Patent, '206 Patent, and '311 Patent are all invalid for, without limitation, obviousness and inequitable conduct.

67.     Around the time Horowitz discovered the Chens had surreptitiously procured the '686 Patent in their own names, the parties ceased doing business. However, the Chens' efforts to copy Horowitz's designs persisted.

68.     By way of example only, Horowitz attends a trade show called the "Hardware Show" in Las Vegas every year, where he displays his wagons to vendors and members of the public.

69.     After Horowitz broke off his relationship with them, the Chens would come to Horowitz's stall at the Hardware Show to photograph his wagons.

70.     The Chens applied for the '940 Patent in August 2013.  The following year, they filed applications for the '206 Patent and the '311 Patent.

71.     All three of the Chens' patents (the '940 Patent, '206 Patent, and '311 Patent) are invalid because, without limitation, they were obvious in light of the prior art including, but not limited to, wagons designed by Horowitz.

72.     For example, in around 2009 Horowitz designed an earlier version of the Horowitz '154 Wagon (the "2009 Horowitz Wagon.")

73.     The 2009 Horowitz Wagon was manufactured and sold by BAM.

74.     The 2009 Horowitz Wagon was advertised in BAM's catalogues dating

1   back to 2009 – three years before the application for the Chens' '940 Patent was filed.

2        75.    The 2009 Horowitz Wagon was virtually identical to the wagon covered

3   by the Chens' '940 Patent but was not disclosed to the PTO in their application for the

4   '940 Patent.

5        76.    The Chens' '206 Patent and '311 Patent are also essentially imitations of

6   wagons invented by Horowitz.  *See*, Exhibits 5 and 9.

7        77.    The '206 Patent and '311 Patent were also obvious in light of other prior

8   art including, by way of example only, a "Shade Wagon" application published in

9   2010.  *See*, Exhibit 11 attached hereto (application for Shade Wagon.)

10        78.    The Shade Wagon and other relevant prior art was not disclosed to the

11   PTO in the Chens' applications for the '206 Patent and '311 Patent.

12   **COUNT ONE**

13   **Declaration of Invalidity and Unenforceability of the '940 Patent**

14        79.    Plaintiffs repeat and reallege the allegations set forth in the preceding

15   paragraphs of the Complaint as if fully set forth herein.

16        80.    The parties have an actual case or controversy regarding the invalidity

17   and unenforceability of the '940 Patent which the Chens have falsely claimed is being

18   infringed by Creative's Distributors, the Online Retailers, and Ollieroo.  For example,

19   there is a ripe dispute between the parties as to whether the '940 Patent is invalid for

20   failing to comply with one or more of the provisions of the Patent Laws of the United

21   States Code, Title 35, including for failing to meet the conditions of patentability set

22   forth in 35 U.S.C. §§ 101, 102, 103, and/or 112.

23        81.    To resolve the legal and factual questions raised by the Chens and to

24   afford relief from the uncertainty and controversy the Chens' accusations of

25   infringement have caused, the Plaintiffs are entitled to a declaratory judgment that the

26   '940 patent is invalid and attorneys' fees under 35 U.S.C. § 285.

27   / / /

28   / / /

9

## COUNT TWO

### Declaration of Invalidity and Unenforceability of the '206 Patent

82.     Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

83.     The parties have an actual case or controversy regarding the invalidity and unenforceability of the '206 Patent which the Chens have falsely claimed is being infringed by Creative's Distributors, the Online Retailers, and Ollieroo.  For example, there is a ripe dispute between the parties as to whether the '206 Patent is invalid for failing to comply with one or more of the provisions of the Patent Laws of the United States Code, Title 35, including for failing to meet the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112.

84.     To resolve the legal and factual questions raised by the Chens and to afford relief from the uncertainty and controversy the Chens' accusations of infringement have caused, the Plaintiffs are entitled to a declaratory judgment that the '206 patent is invalid and attorneys' fees under 35 U.S.C. § 285.

## COUNT THREE

### Declaration of Invalidity and Unenforceability of the '311 Patent

85.     Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

86.     The parties have an actual case or controversy regarding the invalidity and unenforceability of the '311 Patent which the Chens have falsely claimed is being infringed by Creative's Distributors, the Online Retailers, and Ollieroo.  For example, there is a ripe dispute between the parties as to whether the '311 Patent is invalid for failing to comply with one or more of the provisions of the Patent Laws of the United States Code, Title 35, including for failing to meet the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112.

87.     To resolve the legal and factual questions raised by the Chens and to afford relief from the uncertainty and controversy the Chens' accusations of

infringement have caused, the Plaintiffs are entitled to a declaratory judgment that the '311 patent is invalid and attorneys' fees under 35 U.S.C. § 285.

## COUNT FOUR

### Correction of Inventors of the '686 Wagon Patent – 35 U.S.C. § 256

88.     Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

89.     Horowitz was the first to conceive of the subject matter claimed in the '686 Patent.

90.     Horowitz made a significant contribution to the claimed subject matter that greatly exceeds the exercise of ordinary skill in the art.

91.     Horowitz should have been, but was not, named as the inventor on the '686 Patent.  His omission was error which arose without deceptive intent on his part.

92.     The Chens did not make any contribution to the conception of the claimed subject matter of the '686 Patent.  Their inclusion as inventors was in error.

93.     Horowitz should be named as the sole inventor of the '686 Patent or, alternatively, a co-inventor.

94.     The Plaintiffs' have financial and reputational interests that will be advanced if Horowitz is added as the inventor of the '686 Patent and the Chens are are removed as inventors of the '686 Patent.

95.     Horowitz is entitled to the correction of the '686 Patent to name him as the true inventor and attorneys' fees under 35 U.S.C. § 285.

## COUNT FIVE

### Unjust Enrichment/Restitution (Against the Chens)

96.     Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

97.     The Chens were enriched by improperly obtaining the '686 Patent, '940 Patent, '206 Patent, '311 Patent, and any license or other payments or benefits therefrom, at Plaintiffs' expense.

11

98.     As a direct and proximate cause of the Chens' misconduct, Plaintiffs have been harmed in an amount to be determined at trial, and will continue to be harmed until appropriate injunctive relief is granted.

99.     Under these circumstances, equity and good conscience would not permit the Chens to retain any ill-gotten gains.

## COUNT SIX

### Violation of the Lanham Act – 15 U.S.C. § 1125 (Against all Defendants)

100.    Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

101.    The Defendants' assertions that the '686 Patent, '940 Patent, '206 Patent, and '311 Patent were infringed by the Distributors, Online Retailers, and Ollieroo in selling the Horowitz '154 Wagon were made in bad faith and were false.

102.    The Plaintiffs are entitled to damages against the Defendants in an amount to be determined at trial but in no event less than $250,000.00, together with prejudgment interest and attorneys' fees under 15 U.S.C. § 1117(a).

## COUNT SEVEN

### Cal. Bus. Prof. Code § 17200 *et seq.* (Against the Chens)

103.    Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

104.    The Chens engaged in violations of California's Unfair Competition Law, Business and Professions Code § 17200 *et seq.* (the "UCL") by engaging in unfair and unlawful business acts or practices.  As a result of that conduct, Plaintiffs have suffered and continue to suffer injury-in-fact including, without limitation, the deprivation of property that rightfully belongs to the Plaintiffs and ongoing competitive injury.

105.    The Chens' business acts and practices were unfair and unlawful within the meaning of the UCL because, without limitation, they falsely claimed the Distributors, Online Retailers, and Ollieroo were infringing the '686 Patent, '940

Patent, '206 Patent, and '311 Patent by selling the Horowitz '154 Wagon when they knew no such infringement was occurring.

106. In addition, the Chens obtained the '686 Patent through deceptive and wrongful acts, including their willfully deceptive representations to the PTO.

107. The Chens' business acts and practices were unfair and unlawful within the meaning of the UCL because, without limitation, they acquired and licensed, attempted to license, or otherwise benefitted from the '686 Patent, '940 Patent, '206 Patent, and '311 Patent which they obtained by the wrongful misappropriation of Horowitz's designs and their failure to disclose relevant prior art to the PTO.

108. Horowitz invested substantial resources in time, talents, and capital, to conceive of the valuable inventions described in the '154 Patent. The value of that investment and the value of Horowitz's inventions have been and continue to be diminished by the Chens' conduct.

109. Further, Horowitz is the rightful owner of the '686 Patent, and should have the exclusive rights to practice and/or license the claims of the '686 Patent.

110. As a result of their unfair and unlawful conduct, the Chens have obtained specific property – the '686 Patent and the rights of inventorship associated with it – that rightfully belong to Horowitz.

111. The Chens' business acts and practices were and are unfair within the meaning of the UCL because they have caused competitive harm to Plaintiffs and are harmful to competition in general. By obtaining and using Horowitz's designs to deceive the PTO, and unlawfully obtaining exclusive patent rights that rightfully belong to Horowitz, the Chens have wrongfully obtained an unfair competitive advantage over the Plaintiffs.

112. The Chens' business acts and practices were and are unlawful within the meaning of the UCL in that the Chens have, among their other unlawful acts:

a. violated 18 U.S.C. § 1001 by making false and misleading statements to the PTO, including but not limited to the false representation that the Chens, rather

13

than Horowitz, are the inventors of the inventions claimed in the '686 Patent; and

b.     engaged in inequitable conduct before the PTO by failing to disclose prior art relevant to the '940 Patent, '206 Patent, and '311 Patent;

c.     violated § 43(a) of the Lanham Act by wrongfully claiming the sellers of the Horowitz '154 Wagon are infringing the '686 Patent, '940 Patent, '206 Patent, and '311 Patent.

113.   If the PTO had known that Horowitz should have been listed as the inventor of the '686 Patent, or that various claimed limitations from the '686 Patent were inaccurately represented as the Chens' work, it would not have issued the '686 Patent.  Thus, the Chens have made false statements that are likely to deceive the public, including but not limited to the following:

a.     The Chens falsely represented to the PTO that they are the inventors of the inventions claimed in the '686 Patent;

b.     The Chens omitted in their representations to the PTO the fact that Horwitz is the inventor of the inventions claimed in the '686 Patent;

c.     The Chens continue to falsely claim to members of the public that they are the inventors of the inventions claimed in the '686 Patent; and

d.     The Chens continue to falsely claim to members of the public that they are the rightful owners of the '686 Patent.

114.   The Chens obtained the '686 Patent, '940 Patent, '206 Patent, and '311 Patent as a direct and proximate result of their unfair and unlawful business acts or practices.  As a result of such unfair and unlawful conduct, Plaintiffs have suffered irreparable injury and, unless the Chens are enjoined from such conduct, will continue to suffer irreparable injury, whereby Plaintiffs have no adequate remedy at law.

115.   Plaintiffs are, therefore, entitled to restitution and appropriate injunctive relief pursuant to the Court's powers under California Business and Professions Code § 17203 to prevent the Chens from receiving any further benefit from their use of the '686 Patent, '940 Patent, '206 Patent, and '311 Patent.

## COUNT EIGHT

## Cal. Bus. Prof. Code § 17200 *et seq.* – Aiding and Abetting

## (Against Zhang)

116. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

117. Zhang knew the infringement notices he sent for the Chens falsely claimed Creative's Distributors, the Online Retailers, and Ollieroo were infringing the '686 Patent, '940 Patent, '206 Patent, and '311 Patent. Nevertheless, he sent the notices and falsely claimed he had reviewed the accused products identified in them.

118. When confronted with his misconduct, Zhang falsely claimed he had sent retraction letters to Creative's Distributors, the Online Retailers, and Ollieroo when, in fact, he had not.

119. The Plaintiffs are entitled to damages against Zhang in an amount to be determined at trial but in no event less than $250,000.00 plus attorneys' fees and prejudgment interest.

## COUNT NINE

## Intentional Interference with Contract (Against the Chens)

120. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

121. The Plaintiffs have valid contracts with the Distributors, Online Retailers, and Ollieroo to manufacture and sell the Horowitz '154 Wagon.

122. The Chens are aware of the existence of these contracts and intentionally sought to induce a breach or disruption of those contracts by sending the infringement notices to the Distributors, Online Retailers, and Ollieroo.

123. The Chens' misconduct disrupted the Plaintiffs' contractual relationships with the Distributors, Online Retailers, and Ollieroo by causing the Online Retailers to remove the Horowitz '154 Wagon from their websites and by chilling the willingness of the Distributors and Ollieroo to buy and sell the Horowitz '154 Wagon.

15

124.   As a result of the foregoing, the Plaintiffs have been damaged in an amount to be determined at trial but in no event less than $250,000.00 plus attorneys' fees and prejudgment interest.

## COUNT TEN

### Aiding and Abetting Intentional Interference with Contract

### (Against Zhang)

125.   Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

126.   Zhang knew his infringement notices falsely claimed Creative's Distributors, the Online Retailers, and Ollieroo were infringing the '686 Patent, '940 Patent, '206 Patent, and '311 Patent.  Nevertheless, he sent the notices for the Chens and falsely claimed he had reviewed the accused products identified in his letters.

127.   When confronted with his misconduct, Zhang falsely claimed he had sent retraction letters to Creative's Distributors, the Online Retailers, and Ollieroo when, in fact, he had not.

128.   As a result of Zhang's actual knowledge of the falsity of his infringement notices and his substantial assistance to the Chens in interfering with the Plaintiffs' contracts, the Plaintiffs are entitled to damages against Zhang in an amount to be determined at trial but in no event less than $250,000.00 plus attorneys' fees and prejudgment interest.

## COUNT ELEVEN

### Negligent Misrepresentation (Against all Defendants)

129.   Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

130.   The Defendants misrepresented to Creative's Distributors, the Online Retailers, and Ollieroo that they were infringing the '686 Patent, '940 Patent, '206 Patent, and/or '311 Patent without having reasonable grounds for their misrepresentations.

16

131. The Defendants also misrepresented that the Chens were the owners of the '686 Patent even though they assigned it to BAM.

132. The Defendants intended to induce reliance on their misrepresentations by Creative's Distributors, the Online Retailers, and Ollieroo, who justifiably relied on the misrepresentations and were ignorant of the truth.

133. As a result of the foregoing, the Plaintiffs have been damaged in an amount to be determined at trial but in no event less than $250,000.00 plus attorneys' fees and prejudgment interest.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for a judgment against the Defendants as follows:

A. For a declaration that the '940 Patent, '206 Patent, and '311 Patent are invalid;

B. For an Order correcting the '686 Patent to reflect that Horowitz is the true inventor;

C. For a permanent injunction enjoining the Defendants and their agents, servants, employees, attorneys, successors and assigns, and all persons, firms and corporations acting in concert with them  from claiming that sellers of the Horowitz '154 Wagon are infringing the '940 Patent, '206 Patent, and '311 Patent and from misrepresenting that the Chens own the '686 Patent;

D. For damages in an amount to be determined at trial, plus prejudgment interest;

E. For Plaintiffs' attorney fees and costs incurred; and

F. For such other and further relief as the Court deems just and equitable.

*[Signature page follows]*

1

2   Dated: March 10, 2017

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

BLAKELEY LLP


By: */s/ David M. Mannion*
       David M. Mannion

Attorneys for Plaintiffs Brian Horowitz
and Creative Outdoor Distributors USA, Inc.

18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Under Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiffs demand a trial by jury of all issues triable to a jury.

Dated: March 10, 2017                           BLAKELEY LLP


                                                By: */s/ David M. Mannion*
                                                    David M. Mannion

                                                Attorneys for Plaintiffs Brian Horowitz
                                                and Creative Outdoor Distributors USA, Inc.

19