1   DARRELL W. GIBBY, Ark. Bar No. 2007307
    903 SE 22nd Street, Suite, 4
2   Bentonville, AR  72712
    (479)899-2857
3   gibbylaw@att.net

4   MARC C. FORSYTHE – State Bar No. 153854
    **GOE & FORSYTHE, LLP**
5   18101 Von Karman Avenue, Suite 12000
    Irvine, CA  92612
6   Tel:  (949)798-2460
    Fax:  (949) 955-9437
7   mforsythe@goeforlaw.com

8   Attorneys for Plaintiffs and Cross-Defendants
    Brian Horowitz and Creative Outdoor
9   Distributor USA, Inc.

10

11                    **UNITED STATES DISTRICT COURT**

12                   **CENTRAL DISTRICT OF CALIFORNIA**

13   BRIAN HOROWITZ and CREATIVE          Case No.  8:17−cv−00432 AG (JCGx)
14   OUTDOOR DISTRIBUTORS USA, INC.,
                                          Hon. Andrew J. Guilford
15                   Plaintiffs/Counter-
16                   Defendants           **THIRD AMENDED COMPLAINT**

17   v.                                   **DEMAND FOR JURY TRIAL**

18
     YISHUN CHEN, ZHAOSHENG CHEN,
19
20                   Defendants/Counter-
                     Claimant
21   and
22
23   KEVIN XIA,
24                   Defendant
25
26
27
28

Plaintiffs Brian Horowitz and Creative Outdoor Distributors USA, Inc. ("Creative" and, together with Horowitz, the "Plaintiffs") for their third amended complaint against defendants Yishun Chen and Zhaosheng Chen (the "Chens" or the "Defendants") and Kevin Xia ("Xia" and, together with the Chens, the "Defendants"), allege upon personal knowledge with respect to themselves and their own acts, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      The Plaintiffs have patent rights in an extremely popular folding wagon used to transport small household items.  Horowitz invented the wagon and Creative sells it under license.  The Chens have patents for different, less popular folding wagons and are the Plaintiffs' competitors.  Yishun Chen is Zhaosheng's father.

2.      Xia purchases wagons from the Chens and is a business partner with Zhaosheng Chen.  The Chens transferred rights of enforcement of their patents to Xia.

3.      To increase market share for their own inferior wagons the Chens and Xia sent infringement notices to the Plaintiffs' customers falsely claiming they were infringing the Chens' patents.  But the recipients of the Chens' infringement notices were actually selling Horowitz's distinctly different wagon.

4.      The Chens' and Xia's infringement notices were not only baseless, they were sent in bad faith.  The Chens threatened the Plaintiffs' customers with litigation on the cusp of peak selling seasons.  They even sent an infringement notice claiming sellers of Horowitz's wagon infringed a patent for a rectal suppository device the Chens don't own.  Thus, the Plaintiffs seek damages for the Chens' violations of the Lanham Act, Cal. Bus. & Prof. Code § 17200, and tortious interference.

5.      Furthermore, the Chens' wagon patents, which the Defendants falsely claimed the Plaintiffs' customers infringed, are invalid for, *inter alia*, obviousness and failure to name the true inventors.  Accordingly, the Plaintiffs also seek a declaratory judgment invalidating the Chens' patents.

# THE PARTIES

6.     Plaintiff Horowitz is a resident of Mission Viejo, California.

7.     Plaintiff Creative is a Delaware corporation with its principal place of business in Lake Forest, California.

8.     Defendants Yishun and Zhaosheng Chen reside in El Monte, California.

9.     Defendant Xia is a resident of Los Angeles County, California.

# JURISDICTION AND VENUE

10.     The Court has jurisdiction of this action under 28 U.S.C. §§ 1331, 1338, 1367, and 2201.

11.     The Court has personal jurisdiction over the Chens because they reside in California.

12.     Venue is proper under 28 U.S.C. § 1391 because the Chens reside in this District and a substantial part of the events giving rise to the action occurred here.

# FACTUAL ALLEGATIONS

**A.     The parties' former business relationship.**

13.     Horowitz started designing wagons in 2004 and invented his first folding wagon in 2007, which he sold through non-party BAM Brokerage, Inc. d/b/a On the Edge Marketing ("OTEM").

14.     On May 21, 2008, by chance, Horowitz met the Chens for the first time at a Sports Chalet event.

15.     On May 28, 2008, the Chens came to OTEM's offices in Orange County for another meeting.

16.     At the meeting at OTEM's offices, Horowitz gave the Chens a sample of his folding wagon so they could manufacture it for OTEM in their factory in China.

17.     By making Horowitz's wagon the Chens became intimately familiar with its design.  They also began a campaign to copy that design.

18.     For example, in 2008-09 the Chens came to OTEM's offices for several meetings.  Before the meetings they would bypass OTEM's reception and walk into

2

1    its warehouse to view Horowitz's designs.

2        19.    Each time Horowitz had to ask them to leave the warehouse.  Yet on

3    later visits they did the same thing.

4        **B.    The Chens improperly obtain certain patents and fail to name**

5            **the true inventors.**

6        20.    In late 2008 the Chens filed an application with the U.S. Patent and

7    Trademark Office ("PTO") for what became Patent No. 8,011,686 (the "'686

8    Patent.").  *See* Ex. 1.

9        21.    The '686 Patent named the Chens as the inventors of Horowitz's wagon

10   (the "'686 Wagon") even though they were not the true inventors.

11       22.    Although the '686 Patent named both Chens as inventors, Zhaosheng

12   stated in a deposition that Yishun is the true inventor and Zhaosheng was only named

13   an inventor "under my father's request."  Chen Dep., 56:22–57:18 (Ex. 2, pp. 8–9).

14       23.    Indeed, Zhaosheng testified that "my father has applied [for] many

15   patents" and "I do not know . . . whether I was involved in all of them or any of

16   them."  Chen Dep., 60:24–61:01 (Ex. 2, pp. 12–13).  He also testified that "[m]y

17   father designed every detail of the folding wagon."  Chen Dep., 36:24–25 (Ex. 2, p. 7).

18       24.    In truth, Horowitz conceived of the '686 Wagon and reduced it to

19   practice before the Chens filed the '686 Patent application in October 2008.

20       25.    OTEM saved photos of the '686 Wagon as computer files between late

21   2007 and September 2008.  By way of example only, *see* Ex. 3 (screenshots of photos

22   of the '686 Wagon) and compare with Ex. 1, pp. 1–4 ('686 Patent drawings.)

23       26.    Those photos show they haven't been modified since before June 2008

24   (when the Chens filed the '686 Patent application) and this can be forensically

25   verified.

26       27.    One of these photos is dated June 13, 2008 (only 16 days after the

27   Horowitz met with the Chens at his office).

28       28.    Horowitz was also selling the '686 Wagon less than a month after the

3

Chens filed the '686 Patent application.  The Specialty Equipment Market Association ("SEMA") had a trade show in Las Vegas from November 4–7, 2008. OTEM had booth no. 12019 at the show.  *See* Ex. 4, p. 1 (email from SEMA confirming booth number); Ex. 4, p. 2 (photo showing booth no. 12019 on floor.)

29.     OTEM was offering the '686 Wagon for sale at that SEMA show (with and without a canopy and with OTEM's logo).  *Compare* Ex. 4, pp. 2 – 4 (photos of '686 Wagon at show) and Ex. 1, pp. 1 – 4 ('686 Patent drawings.)

30.     To get the '686 Wagon samples in time for the SEMA show, OTEM had to order them from China during summer 2008.

31.     OTEM also had to provide SEMA with photos of the '686 Wagon in September 2008 for inclusion in SEMA's brochure.  *See* Ex. 4, pp. 5 – 8 (pictures of the '686 Wagon in the 2008 SEMA brochure).

32.     Horowitz had these photos and samples of the '686 Wagon before the Chens filed the '686 Patent application because he is the wagon's true inventor.

**C.     Horowitz obtains and exploits the patent for the current version of his folding wagon.**

33.     In September 2015, the PTO issued Patent No. 9,145,154 to Horowitz (the "Horowitz '154 Patent") for the current version of his folding wagon, which is at the center of this action (the "Horowitz '154 Wagon").  *See* Ex. 5.

34.     As Horowitz's licensee, Creative sells the Horowitz '154 Wagon through Amazon and eBay (the "Online Retailers").  *See* Ex. 6 (excerpt of Creative's license.)

35.     Creative also sells the Horowitz '154 Wagon to distributors, who resell it through the Online Retailers.  *See* Ex. 12.

36.     Horowitz also gave non-party Ollieroo, Inc. ("Ollieroo") a license to sell the Horowitz '154 Wagon.  *See* Ex. 7 (excerpt of Ollieroo's license).  Ollieroo also sells the Horowitz '154 Wagon through the Online Retailers.

**D.   The Chens obtain patents for three distinctly different wagons.**

37.     In March 2015 the PTO issued Patent No. 8,973,940 (the "'940 Patent")

to the Chens for a folding wagon.  *See* Ex. 8.

38.   In July 2015 the PTO issued Patent No. 9,085,311 (the "'311 Patent") to the Chens for a second folding wagon.  *See* Ex. 9.

39.   And in August 2015, the PTO issued Patent No. 9,101,206 (the "'206 Patent") to the Chens for a third folding wagon.  *See* Ex. 10.  The Chens' '940 Patent, '206 Patent, and '311 Patent are referred to collectively as the "Chens' Patents."

40.   The Horowitz '154 Wagon takes up less space when folded than the wagons claimed by the Chens' Patents, and its sales far exceed sales of the Chens' wagons.

**E.   The Chens attempt to transfer the rights to enforce their patents to Kevin Xia.**

41.   In or about the end of 2015 or the beginning of 2016, the Chens attempted to orally authorized Wonderfold Outdoor, a brand personally owned by Xia, to enforce their patents.  On or about January 1, 2017, they put their intended authorization in writing in a contract signed by both the Chens and Xia.  *See* Ex. 15 (written agreement between the Chens and Xia for Xia to enforce the Chens' patents.)

42.   The Chens did not make Xia or his brand an exclusive licensee of their patents.

43.   The Chens did not transfer all substantial rights to their patents to Xia or his brand.

44.   Xia did not have the right to enforce the patent in his own name or in his brand's name.

**D.   The Chens claim in bad faith that sellers of the Horowitz '154 Wagon are infringing their patents.**

45.   In around November 2016, the Chens and Xia started sending infringement notices to the Online Retailers (such as Amazon), Creative's distributors, and Ollieroo, falsely claiming sales of the Horowitz '154 Wagon infringed the Chens' Patents.  *See* Ex. 11 (sample infringement notices.)

5

46.     But the Horowitz '154 Wagon clearly does not infringe.  In particular, Plaintiffs' products do not infringe on any claim of the Chens' patents because they do not have at least one or more of the following:

        a.  Vertical supports;

        b.  Supplemental links;

        c.  Lower horizontal supports extending between vertical supports;

        d.  Upper horizontal supports extending between vertical supports;

        e.  Leaning connections;

        f.  Leaning connections formed by the front and rear horizontal bars; leaning against vertical supports;

        g.  Flatbed supports pivotally connected to vertical supports;

        h.  Fabric bed with rigid bottom panels;

        i.  Diagonal folding members connected to vertical supports;

        j.  Diagonal folding members connected to leaning bars;

        k.   Middle rail;

        l.  Telescopic handle;

        m. Umbrella;

        n.  Table top;

        o.  Pole.

47.     The Chens and Xia also sent infringement notices to Amazon, Ollieroo, and others claiming sales of the Horowitz '154 Wagon infringed the '686 Patent.  *See* Ex. 11, pp. 1–3, 16–20 (sample infringement notices concerning the '686 Patent.)

48.     But the '686 Patent is invalid because, *inter alia*, it fails to name the true inventors, and the Chens know this because they stole the design from Horowitz.

49.     The Chens and Xia also sent their infringement notices on the cusp of peak selling seasons, causing maximum harm to the Plaintiffs' business and maximum benefit to their own.  *See e.g.* Ex. 11, p. 1 (infringement notice sent two days before Black Friday); Ex. 11, pp. 4 – 12 (five infringement notices sent in the

THIRD AMENDED COMPLAINT
Case No. 8:17−cv−00432 AG(JCGX)

three weeks before Christmas).

50.     The Chens even sent an infringement notice to Amazon claiming sellers of the Horowitz '154 Wagon were infringing Patent No. 8,192,393.  That patent is for a rectal suppository device the Chens don't own and whose patent number doesn't resemble any of the Chens' Patents or the '686 Patent.  *See* Ex. 11, pp. 24–25.

**F.     The Chens' infringement notices harmed the Plaintiffs' business.**

51.     Upon receiving the Chens' and Xia's infringement notices, the Plaintiffs were contacted by Ollieroo (Horowitz's licensee) and several of Creative's distributors, including Impresa Mistral, D&H Distributing, WagonsNMore, and JB Tools (the "Distributors").

52.     Each complained, orally and in writing, that the Chens and Xia had threatened them with litigation. *See e.g.* Ex. 13 (emails from Ollieroo, Impresa Mistral, and D&H).

53.     The Chens' and Xia's infringement notices also caused Creative to be suspended from selling the Horowitz '154 Wagon on Amazon Business, which is Amazon's website for business-to-business sales.

54.     In fact, Creative's Amazon Business account was flagged for "fraud." *See e.g.* Ex. 13, pp. 14 – 17 (emails with Amazon Business Account Representative).

55.     Creative has also been intermittently suspended from selling the Horowitz '154 Wagon on Amazon.com, which is Amazon's consumer platform.

56.     The Chens' and Xia's infringement notices also impaired Ollieroo's ability to exploit its license to sell the Horowitz '154 Wagon, which in turn undermines Horowitz's ability to charge licensing fees for the Horowitz '154 Patent.

57.     Similarly, the Distributors have had their listings of the Horowitz '154 Wagon removed from Amazon.com.  This has impaired their ability to sell the Horowitz '154 Wagon and chilled their willingness to buy it from Creative.  As a result, Creative has lost sales and suffered reputational damage.

**G.     The Chens' Patents and the '686 Patent are invalid.**

58.     In addition to seeking damages caused by the false infringement notices sent by the Chens and Xia to sellers of the Horowitz '154 Wagon, the Plaintiffs seek a declaratory judgment of invalidity concerning the Chens' Patents and the '686 Patent for, without limitation, obviousness, insufficient disclosure, indefiniteness, failure to name the true inventors, and inequitable conduct.

59.     All three of the Chens' Patents (the '940 Patent, '206 Patent, and '311 Patent) are invalid because, without limitation, because they were obvious in light of the prior art including, but not limited to, wagons designed by Horowitz.

60.     Prior art that disclosed and/or practiced each claim element of the '940 Patent was known or used by others in this country, or was described in a printed publication in this country, prior to the effective filing date of the '940 patent.

61.     For example, the prior art relevant to the '940 Patent includes a folding wagon that anticipates a substantial portion of the claim elements of the '940 patent, and one or more items in analogous fields that practice the remaining claim elements of the '940 patent, the combination of which would have been obvious to a person having ordinary skill in the art.

62.     Prior art that disclosed and/or practiced each claim element of the '206 Patent was known or used by others in this country, or was described in a printed publication in this country prior to the effective filing date of the '206 patent.

63.     For example, the prior art relevant to the '206 Patent includes folding wagons and additional art in analogous fields that, when combined, disclose each claim element of the '206 Patent, the combination of which would have been obvious to a person having ordinary skill in the art.

64.     Prior art that disclosed and/or practiced each claim element of the '311 Patent was known or used by others in this country, or was described in a printed publication in this country, prior to the effective filing date of the '311 patent.

65.     For example, the prior art relevant to the '311 Patent includes folding wagons and additional art in analogous fields that, when combined, disclose each

8

claim element of the '311 Patent, the combination of which would have been obvious to a person having ordinary skill in the art.

66.     Prior art that disclosed and/or practiced each claim element of the '686 Patent was known or used by others in this country, or was described in a printed publication in this country, prior to the Chens' purported invention of the folding wagon disclosed in the '686 patent.

67.     For example, the prior art relevant to the '686 Patent includes folding wagons and additional art in analogous fields that, when combined, disclose each claim element of the '686 Patent, the combination of which would have been obvious to a person having ordinary skill in the art.

68.     The '940 Patent is invalid for failing to comply with the specification requirements of 35 U.S.C. § 112, such as insufficient disclosure and indefinite claims elements.

69.     The written description of the '940 Patent fails to disclose elements claimed by the '940 Patent in such full, clear, concise, and exact terms as to allow a person having ordinary skill in the art to make and use the claimed invention.

70.     The claim language of the '940 Patent, when read in light of the specification and prosecution history, fails to inform, with reasonable certainty, those skilled in the art about elements of the claimed invention.

71.     The '686 Patent is also invalid for failing to name only the correct inventors.

72.     The '686 Patent is also invalid because the Chens knew that the named inventors were not the true inventors.

73.     The '686 Patent is also invalid because Zhaosheng Chen intended to mislead the Patent Office when he signed oaths claiming to be an inventor of the claimed inventions, even though he was not.

## COUNT ONE

### Declaration of Invalidity and Unenforceability of the '940 Patent

9

74.     Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of the Third Amended Complaint as if fully set forth herein.

75.     The parties have an actual case or controversy regarding the invalidity and unenforceability of the '940 Patent which the Chens and Xia have falsely claimed is being infringed by Creative's Distributors, the Online Retailers, and Ollieroo.

76.     There is a ripe dispute between the parties as to whether the '940 Patent is invalid for failing to comply with one or more of the provisions of the Patent Laws of the United States Code, Title 35, including for failing to meet the conditions of patentability set forth in 35 U.S.C. §§ 102, 103, and/or 112.  Without limitation, the '940 Patent is invalid for obviousness.

77.     To resolve the legal and factual questions raised and to afford relief from the uncertainty and controversy the Chens' and Xia's accusations of infringement have caused, the Plaintiffs are entitled to a declaratory judgment that the '940 patent is invalid and attorneys' fees under 35 U.S.C. § 285.

## COUNT TWO

### Declaration of Invalidity and Unenforceability of the '206 Patent

78.     Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of the Third Amended Complaint as if fully set forth herein.

79.     The parties have an actual case or controversy regarding the invalidity and unenforceability of the '206 Patent which the Chens and Xia have falsely claimed is being infringed by Creative's Distributors, the Online Retailers, and Ollieroo.

80.     There is a ripe dispute between the parties as to whether the '206 Patent is invalid for failing to comply with one or more of the provisions of the Patent Laws of the United States Code, Title 35, including for failing to meet the conditions of patentability set forth in 35 U.S.C. §§ 102, 103, and/or 112.  Without limitation, the '206 Patent is invalid for obviousness.

81.     To resolve the legal and factual questions raised and to afford relief from the uncertainty and controversy the Chens' and Xia's accusations of infringement

have caused, the Plaintiffs are entitled to a declaratory judgment that the '206 patent is invalid and attorneys' fees under 35 U.S.C. § 285.

## COUNT THREE

### Declaration of Invalidity and Unenforceability of the '311 Patent

82.     Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of the Third Amended Complaint as if fully set forth herein.

83.     The parties have an actual case or controversy regarding the invalidity and unenforceability of the '311 Patent which the Chens and Xia have falsely claimed is being infringed by Creative's Distributors, the Online Retailers, and Ollieroo.

84.     There is a ripe dispute between the parties as to whether the '311 Patent is invalid for failing to comply with one or more of the provisions of the Patent Laws of the United States Code, Title 35, including for failing to meet the conditions of patentability set forth in 35 U.S.C. §§ 102, 103, and/or 112.  Without limitation, the '311 Patent is invalid for obviousness.

85.     To resolve the legal and factual questions raised and to afford relief from the uncertainty and controversy the Chens' and Xia's accusations of infringement have caused, the Plaintiffs are entitled to a declaratory judgment that the '311 patent is invalid and attorneys' fees under 35 U.S.C. § 285.

## COUNT FOUR

### Declaration of Invalidity and Unenforceability of the '686 Patent or,
### alternatively, Correction of the Inventors – 35 U.S.C. § 256

86.     Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of the Third Amended Complaint as if fully set forth herein.

87.     Horowitz was the first to conceive of, and reduce to practice, the subject matter claimed in the '686 Patent.

88.     Horowitz should have been, but was not, named as the inventor on the '686 Patent.  His omission was error which arose without deceptive intent on his part.

89.     The Chens did not make any contribution to the conception of the

11

claimed subject matter of the '686 Patent.

90.     Horowitz should be named as the sole inventor of the '686 Patent.

91.     The Plaintiffs' have financial and reputational interests that will be advanced if Horowitz is added as the inventor of the '686 Patent and the Chens are removed as inventors of the '686 Patent.

92.     Horowitz is entitled to the correction of the '686 Patent to name him as the true inventor and attorneys' fees under 35 U.S.C. § 285.

93.     Alternatively, the '686 Patent should be invalidated for failing to comply with one or more of the provisions of the Patent Laws of the United States Code, Title 35, including for failing to meet the conditions of patentability set forth in 35 U.S.C. §§ 102, 103, and/or 112.

## COUNT FIVE

### Restitution

94.     Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of the Third Amended Complaint as if fully set forth herein.

95.     The Chens were unjustly enriched by improperly obtaining the '686 Patent, '940 Patent, '206 Patent, '311 Patent, and any license or other payments or benefits therefrom, at Plaintiffs' expense.

96.     As a direct and proximate cause of the Chens' and Xia's misconduct, Plaintiffs have been harmed in an amount to be determined at trial and will continue to be harmed until appropriate injunctive relief is granted.

97.     Under these circumstances, equity and good conscience would not permit the Chens and Xia to retain any ill-gotten gains.

## COUNT SIX

### Violation of the Lanham Act – 15 U.S.C. § 1125

98.     Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of the Third Amended Complaint as if fully set forth herein.

99.     The Defendants' assertions that the '686 Patent, '940 Patent, '206 Patent,

12

and '311 Patent were infringed by the Distributors, Online Retailers, and Ollieroo selling the Horowitz '154 Wagon were false and were made in bad faith.

100.   The Chens' and Xia's infringement notices had the tendency to materially deceive Ollieroo, the Distributors and Amazon.

101.   Creative and Ollieroo sell their goods in interstate commerce and the infringement notices to Ollieroo, the Distributors, and Amazon entered interstate commerce and caused the Plaintiffs to lose sales and goodwill.

102.   The Chens' and Xia's infringement notices and communications with Ollieroo, the Distributors, and Amazon also promoted their products.

103.   The Plaintiffs are entitled to damages against the Chens and Xia in an amount to be determined at trial but in no event less than $250,000.00, together with prejudgment interest and attorneys' fees under 15 U.S.C. § 1117(a).

**COUNT SEVEN**

**Cal. Bus. Prof. Code § 17200** *et seq.*

104.   Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of the Third Amended Complaint as if fully set forth herein.

105.   The Chens and Xia engaged in violations of California's Unfair Competition Law, Business and Professions Code § 17200 *et seq.* (the "UCL") by engaging in unfair and unlawful business acts or practices.  As a result of that conduct, the Plaintiffs have suffered and continue to suffer injury-in-fact including, without limitation, the deprivation of property that rightfully belongs to the Plaintiffs and ongoing competitive injury.

106.   The Chens' and Xia's business acts and practices were unfair and unlawful within the meaning of the UCL because, without limitation, they falsely claimed the Distributors, Online Retailers, and Ollieroo were infringing the '686 Patent, '940 Patent, '206 Patent, and '311 Patent by selling the Horowitz '154 Wagon when they knew no such infringement was occurring and/or the patents were invalid.

107.   In addition, Xia's reports to Amazon claim that he or his brand is the

owner of the Chen's patents, when in fact, he is not.  Such reports were fraudulent and deceptive and were calculated to deceive Amazon into cancelling Plaintiffs' and Plaintiffs' customers' right to sell on Amazon.

108.   In addition, the Chens obtained the '686 Patent through deceptive and wrongful acts, including their willfully deceptive representations to the PTO concerning inventorship in violation of, *inter alia*, 37 C.F.R. § 11.18(b)(1).

109.   The Chens' business acts and practices were unfair and unlawful within the meaning of the UCL because, without limitation, they acquired and licensed, tried to license, or otherwise benefitted from the '686 Patent, '940 Patent, '206 Patent, and '311 Patent which they obtained by wrongfully misappropriating Horowitz's designs and/or failing to disclose relevant prior art to the PTO.

110.   Horowitz invested substantial resources in time, talents, and capital, to conceive of the inventions described in the Horowitz '154 Patent.  *See* Ex. 7 (the Horowitz '154 Patent).  The value of that investment and the value of Horowitz's inventions have been and continue to be diminished by the Chens' misconduct.

111.   Further, Horowitz is the true inventor of the wagon claimed by the '686 Patent, and should have the exclusive rights to practice and/or license the claims of the '686 Patent.

112.   As a result of their unfair and unlawful conduct, the Chens have obtained specific property (*e.g.*, the '686 Patent), and the rights of inventorship associated with it, that rightfully belong to Horowitz.

113.   The Chens' business acts and practices were and are unfair within the meaning of the UCL because they have caused competitive harm to the Plaintiffs and are harmful to competition in general.  By obtaining and using Horowitz's designs to deceive the PTO, and unlawfully obtaining exclusive patent rights that rightfully belong to Horowitz, the Chens have wrongfully obtained an unfair competitive advantage over the Plaintiffs.

114.   The Chens' business acts and practices were and are unlawful within the

14

meaning of the UCL in that they have, among their other unlawful acts:

a. violated 18 U.S.C. § 1001 and 37 C.F.R. § 11.18(b)(1)  by making false and misleading statements to the PTO, including but not limited to the false representation that the Chens, rather than Horowitz, are the inventors of the inventions claimed in the '686 Patent;

b. engaged in inequitable conduct before the PTO by failing to disclose prior art relevant to the '940 Patent, '206 Patent, and '311 Patent; and

c. violated § 43(a) of the Lanham Act by wrongfully claiming the sellers of the Horowitz '154 Wagon are infringing the '686 Patent, '940 Patent, '206 Patent, and '311 Patent.

115.   If the PTO had known that Horowitz should have been named as the inventor of the '686 Patent, or that various claimed limitations from that patent were inaccurately represented as the Chens' work, it would not have issued the patent. Thus, the Chens have made false statements that are likely to deceive the public, including but not limited to the following:

a. The Chens falsely represented to the PTO that they are the inventors of the invention claimed in the '686 Patent;

b. The Chens omitted in their representations to the PTO the fact that Horowitz is the inventor of the invention claimed in the '686 Patent; and

d. The Chens continue to falsely claim to members of the public that they are the inventors of the invention claimed in the '686 Patent.

116.   The Chens obtained the '686 Patent, '940 Patent, '206 Patent, and '311 Patent as a direct and proximate result of their unfair and unlawful business acts or practices.  As a result, the Plaintiffs have suffered irreparable injury and, unless the Chens are enjoined from such conduct, will continue to suffer irreparable injury, whereby Plaintiffs have no adequate remedy at law.

117.   Plaintiffs are entitled to restitution and appropriate injunctive relief pursuant to the Court's powers under the California Business and Professions Code to

1   prevent the Chens and Xia from receiving any further benefit from their use of the

2   '686 Patent,'940 Patent, '206 Patent, and '311 Patent.

3                              **COUNT EIGHT**

4                  **Intentional Interference with Contract**

5                      **(Creative against the Chens)**

6       118.   Plaintiffs repeat and reallege the allegations set forth in the preceding

7   paragraphs of the Third Amended Complaint as if fully set forth herein.

8       119.   All sellers using Amazon, including Creative, are parties to the Amazon

9   Services Business Solutions Agreement (the "Amazon Seller's Contract").  *See* Ex.

10  14 (excerpt of Amazon Seller's Contract).

11      120.   The Chens sell folding wagons on Amazon through their company,

12  Everyday Sports Inc., which is a party to the Amazon Seller's Contract.

13      121.   The Chens know that, as an Amazon seller, Creative is also a party to the

14  Amazon Seller's Contract.

15      122.   The Amazon Seller's Contract states that every Amazon seller

16  "AGREE[S] TO BE BOUND BY THE TERMS OF THIS AGREEMENT,

17  INCLUDING THE SERVICE TERMS AND PROGRAM POLICIES[.]"  *See* Ex. 14,

18  p. 1 (emphasis in original).  It also states that "[t]his Agreement incorporates and you

19  accept the applicable Service Terms and Program Policies[.]"  *See* Ex. 14, p. 2.

20      123.   The term "'Program Policies' means all terms, conditions, policies,

21  guidelines, rules, and other information on the applicable Amazon Site . . . including

22  those shown on the 'Policies and Agreements' section of Seller Central or elsewhere

23  in the 'Help' section of Seller Central[.]" *See* Ex. 14, p. 3.

24      124.   The Program Policies state that "[l]isting prohibited intellectual property

25  may result in the cancellation of your listings, or the suspension or removal of your

26  selling privileges."  *See* Ex. 14, p. 4.

27      125.   The Program Policies further state that "[a]s a seller you are responsible

28  for ensuring your products do not violate others' patent rights."  *See* Ex. 14, p. 4.

126.   Plaintiffs' products do not embody, either literally or equivalently, all the elements of any single claim in any of the Chens' patents.

127.   The Chens' intentional acts (*i.e.*, sending infringement notices to Amazon) were designed to disrupt Creative's contractual relationship with Amazon under the Amazon Seller's Contract.

128.   The Chens succeeded in disrupting Creative's contractual relationship with Amazon, causing damage to Creative by having its Amazon listings repeatedly removed and its Amazon Business account suspended indefinitely.

129.   As a result of the foregoing, Creative has been damaged in an amount to be determined at trial together with attorneys' fees and prejudgment interest.  In addition, Creative is entitled to exemplary damages in an amount to be determined at trial under Cal. Civ. Code § 3294(a).

**COUNT NINE**

**Intentional Interference with Contract**

**(Creative against Xia)**

130.   Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of the Third Amended Complaint as if fully set forth herein.

131.   All sellers using Amazon, including Creative, are parties to the Amazon Services Business Solutions Agreement (the "Amazon Seller's Contract").  *See* Ex. 14 (excerpt of Amazon Seller's Contract).

132.   Xia sells folding wagons on Amazon through his company, Everydaysports Outdoor Corp. d/b/a Wonderfold which is a party to the Amazon Seller's Contract.

133.   Xia knows that, as an Amazon seller, Creative is also a party to the Amazon Seller's Contract.

134.   The Amazon Seller's Contract states that every Amazon seller "AGREE[S] TO BE BOUND BY THE TERMS OF THIS AGREEMENT, INCLUDING THE SERVICE TERMS AND PROGRAM POLICIES[.]"  *See* Ex. 14,

17

p. 1 (emphasis in original).  It also states that "[t]his Agreement incorporates and you accept the applicable Service Terms and Program Policies[.]"  *See* Ex. 14, p. 2.

135.   The term "'Program Policies' means all terms, conditions, policies, guidelines, rules, and other information on the applicable Amazon Site . . . including those shown on the 'Policies and Agreements' section of Seller Central or elsewhere in the 'Help' section of Seller Central[.]" *See* Ex. 14, p. 3.

136.   The Program Policies state that "[l]isting prohibited intellectual property may result in the cancellation of your listings, or the suspension or removal of your selling privileges." *See* Ex. 14, p. 4.

137.   The Program Policies further state that "[a]s a seller you are responsible for ensuring your products do not violate others' patent rights." *See* Ex. 14, p. 4.

138.   Plaintiffs' products do not embody, either literally or equivalently, all the elements of any single claim in any of the Chens' patents.

139.   Xia's intentional acts (*i.e.*, sending infringement notices to Amazon) were designed to disrupt Creative's contractual relationship with Amazon under the Amazon Seller's Contract.

140.   Xia succeeded in disrupting Creative's contractual relationship with Amazon, causing damage to Creative by having its Amazon listings repeatedly removed and its Amazon Business account suspended indefinitely.

141.   As a result of the foregoing, Creative has been damaged in an amount to be determined at trial together with attorneys' fees and prejudgment interest.  In addition, Creative is entitled to exemplary damages in an amount to be determined at trial under Cal. Civ. Code § 3294(a).

## COUNT TEN

### Intentional Interference with Contract

### (Horowitz against the Chens)

142.   Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of the Third Amended Complaint as if fully set forth herein.

18

143.   Horowitz has a contract with Ollieroo (Ex. 7).

144.   The Chens knew about that contract and their intentional acts (*i.e.*, sending infringement notices to Ollieroo and targeting Ollieroo's Amazon listings) were designed to disrupt Horowitz's contractual relationship with Ollieroo.

145.   The Chens' infringement notices impaired Ollieroo's ability to exploit its license to sell the Horowitz '154 Wagon.  This in turn undermined Horowitz's ability to charge licensing fees for the Horowitz '154 Patent.

146.   Plaintiffs' products do not embody, either literally or equivalently, all the elements of any single claim in any of the Chens' patents.

147.   Therefore, the Chens' reports of infringement by Plaintiffs' products were wrongful and calculated to interfere with Plaintiffs' contracts and gain an improper market advantage.

148.   As a result of the foregoing, Horowitz has been damaged in an amount to be determined at trial together with attorneys' fees and prejudgment interest.  In addition, Horowitz is entitled to exemplary damages in an amount to be determined at trial under Cal. Civ. Code § 3294(a).

**COUNT ELEVEN**

**Intentional Interference with Contract**

**(Horowitz against Xia)**

149.   Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of the Third Amended Complaint as if fully set forth herein.

150.   Horowitz has a contract with Ollieroo (Ex. 7).

151.   Xia knew about that contract and their intentional acts (*i.e.*, sending infringement notices to Ollieroo and targeting Ollieroo's Amazon listings) were designed to disrupt Horowitz's contractual relationship with Ollieroo.

152.   Xia's infringement notices impaired Ollieroo's ability to exploit its license to sell the Horowitz '154 Wagon.  This in turn undermined Horowitz's ability to charge licensing fees for the Horowitz '154 Patent.

19

153.   Plaintiffs' products do not embody, either literally or equivalently, all the elements of any single claim in any of the Chens' patents.

154.   Therefore, Xia's reports of infringement by Plaintiffs' products were wrongful and calculated to interfere with Plaintiffs' contracts and gain an improper market advantage.

155.   As a result of the foregoing, Horowitz has been damaged in an amount to be determined at trial together with attorneys' fees and prejudgment interest.  In addition, Horowitz is entitled to exemplary damages in an amount to be determined at trial under Cal. Civ. Code § 3294(a).

## COUNT TWELVE

### Intentional Interference with Prospective Economic Advantage
### (Creative against the Chens)

156.   Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of the Third Amended Complaint as if fully set forth herein.

157.   Creative has an economic relationship with distributors of the Horowitz '154 Wagon, including Impresa Mistral, LLC, WagonsNMore, Inc., D and H Inc., and J and B Tools Inc. (the "Distributors").

158.   The Distributors have all previously bought the Horowitz '154 Wagon from Creative, and Creative has a probability of future economic benefit with them.

159.   Creative also has an economic relationship with Amazon.  Creative has previously sold the Horowitz '154 Wagon through its Amazon business account, and had the probability of being able to do so in the future.

160.   The Chens knew about Creative's relationship with the Distributors and Amazon, and their intention actions (*i.e.*, sending infringement notices) were designed to disrupt Creative's relationships with the Distributors and Amazon by threatening them with litigation.

161.   The Chens succeeded in disrupting Creative's relationships with the Distributors, who ceased placing orders with Creative for the Horowitz '154 Wagon

1  or reduced their order volume due to the Chens' threats of litigation.

2      162.   The Chens also succeeded in disrupting Creative's relationship with

3  Amazon, by causing the suspension of Creative's Amazon business account and

4  intermittently suspending its Amazon.com consumer account.

5      163.   Plaintiffs' products do not embody, either literally or equivalently, all the

6  elements of any single claim in any of the Chens' patents.

7      164.   Therefore, the Chens' reports of infringement by Plaintiffs' products

8  were wrongful and calculated to interfere with Plaintiffs' prospective economic

9  advantages  and gain an improper market advantage.

10      165.   The wrongfulness element is satisfied by the falsity of the Chens'

11  infringement notices (Ex. 12 [noninfringement chart]) and the Chens' bad faith.  And

12  the Chens knew that their infringement notices were certain or substantially certain to

13  disrupt Creative's relationships with the Distributors and Amazon.

14      166.   As a result of the foregoing, Creative has been damaged in an amount to

15  be determined at trial together with attorneys' fees and prejudgment interest.  In

16  addition, Creative is entitled to exemplary damages in an amount to be determined at

17  trial under Cal. Civ. Code § 3294(a).

18                          **COUNT THIRTEEN**

19      **Intentional Interference with Prospective Economic Advantage**

20                          **(Creative against Xia)**

21      167.   Plaintiffs repeat and reallege the allegations set forth in the preceding

22  paragraphs of the Third Amended Complaint as if fully set forth herein.

23      168.   Creative has an economic relationship with distributors of the Horowitz

24  '154 Wagon, including Impresa Mistral, LLC, WagonsNMore, Inc., D and H Inc., and

25  J and B Tools Inc. (the "Distributors").

26      169.   The Distributors have all previously bought the Horowitz '154 Wagon

27  from Creative, and Creative has a probability of future economic benefit with them.

28      170.   Creative also has an economic relationship with Amazon.  Creative has

previously sold the Horowitz '154 Wagon through its Amazon business account, and had the probability of being able to do so in the future.

171.   Xia knew about Creative's relationship with the Distributors and Amazon, and their intention actions (*i.e.*, sending infringement notices) were designed to disrupt Creative's relationships with the Distributors and Amazon by threatening them with litigation.

172.   Xia succeeded in disrupting Creative's relationships with the Distributors, who ceased placing orders with Creative for the Horowitz '154 Wagon or reduced their order volume due to the Chens' threats of litigation.

173.   Xia also succeeded in disrupting Creative's relationship with Amazon, by causing the suspension of Creative's Amazon business account and intermittently suspending its Amazon.com consumer account.

174.   Plaintiffs' products do not embody, either literally or equivalently, all the elements of any single claim in any of the Chens' patents.

175.   Therefore, Xia's reports of infringement by Plaintiffs' products were wrongful and calculated to interfere with Plaintiffs' prospective economic advantages and gain an improper market advantage.

176.   The wrongfulness element is satisfied by the falsity of the Xia's infringement notices (Ex. 12 [noninfringement chart]) and the Chens' bad faith.  And Xia knew that their infringement notices were certain or substantially certain to disrupt Creative's relationships with the Distributors and Amazon.

As a result of the foregoing, Creative has been damaged in an amount to be determined at trial together with attorneys' fees and prejudgment interest.  In addition, Creative is entitled to exemplary damages in an amount to be determined at trial under Cal. Civ. Code § 3294(a).

## COUNT FOURTEEN

**Intentional Interference with Prospective Economic Advantage**

**(Horowitz against the Chens)**

22

177.   Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of the Second Amended Complaint as if fully set forth herein.

178.   Horowitz has an economic relationship with Ollieroo (Ex. 7) as a licensee of the Horowitz '154 Patent.

179.   Ollieroo has previously manufactured the Horowitz '154 Wagon, and Horowitz has a probability of future economic benefit with Ollieroo.

180.   The Chens knew about Horowitz's relationship with Ollieroo and their intentional acts (*i.e.*, sending infringement notices to Ollieroo) were designed to disrupt Horowitz's economic relationship with Ollieroo.

181.   The Chens' infringement notices impaired Ollieroo's ability to exploit its license to sell the Horowitz '154 Wagon by having its Amazon listings removed and making it fearful of litigation if it continued to sell the Horowitz '154 Wagon.  This in turn undermined Horowitz's ability to charge royalties for the Horowitz '154 Patent.

182.   Plaintiffs' products do not embody, either literally or equivalently, all the elements of any single claim in any of the Chens' patents.

183.   Therefore, the Chens' reports of infringement by Plaintiffs' products were wrongful and calculated to interfere with Plaintiffs' prospective economic advantages and gain an improper market advantage.

184.   The wrongfulness element is satisfied by the falsity of the Chens' infringement notices (Ex. 12 [noninfringement chart]) and the Chens' bad faith.

185.   As a result of the foregoing, Horowitz has been damaged in an amount to be determined at trial together with attorneys' fees and prejudgment interest.  In addition, Horowitz is entitled to exemplary damages in an amount to be determined at trial under Cal. Civ. Code § 3294(a).

## COUNT FIFTEEN

### Intentional Interference with Prospective Economic Advantage

### (Horowitz against Xia)

186.   Plaintiffs repeat and reallege the allegations set forth in the preceding

1  paragraphs of the Third Amended Complaint as if fully set forth herein.

2      187.   Horowitz has an economic relationship with Ollieroo (Ex. 7) as a

3  licensee of the Horowitz '154 Patent.

4      188.   Ollieroo has previously manufactured the Horowitz '154 Wagon, and

5  Horowitz has a probability of future economic benefit with Ollieroo.

6      189.   Xia knew about Horowitz's relationship with Ollieroo and their

7  intentional acts (*i.e.*, sending infringement notices to Ollieroo) were designed to

8  disrupt Horowitz's economic relationship with Ollieroo.

9      190.   Xia's infringement notices impaired Ollieroo's ability to exploit its

10 license to sell the Horowitz '154 Wagon by having its Amazon listings removed and

11 turn undermined Horowitz's ability to charge royalties for the Horowitz '154 Patent.

12     191.   Plaintiffs' products do not embody, either literally or equivalently, all the

13 elements of any single claim in any of the Chens' patents.

14     192.   Therefore, Xia's reports of infringement by Plaintiffs' products were

15 wrongful and calculated to interfere with Plaintiffs' prospective economic advantages

16 and gain an improper market advantage.

17     193.   The wrongfulness element is satisfied by the falsity of the Xia's

18 infringement notices (Ex. 12 [noninfringement chart]) and the Chens' bad faith.

19     194.   As a result of the foregoing, Horowitz has been damaged in an amount to

20 be determined at trial together with attorneys' fees and prejudgment interest.  In

21 addition, Horowitz is entitled to exemplary damages in an amount to be determined at

22 trial under Cal. Civ. Code § 3294(a).

23

24                    **COUNT SIXTEEN**

25 **(For Negligent Interference with Prospective Economic Relations Against all
   Defendants)**

26     195.   Plaintiffs repeat and reallege the allegations set forth in the preceding

27 paragraphs of the Third Amended Complaint as if fully set forth herein.

28

24

196.   Plaintiff and its customers were in an economic relationship that would very likely have resulted in an economic benefit to Plaintiff.

197.   Xia is not an owner of the subject Chen patents and have no right to enforce any of them against infringers.

198.   Defendants knew that Plaintiff had a relationship with its distributor that discontinued when they reported and refused to retract false claims of patent ownership to Amazon.

199.   Defendants knew or should have known that when they reported and failed to retract their false reports to Amazon after receiving Plaintiff's correspondence Plaintiff's relationship with its customers would be disrupted.

200.   Plaintiffs' products do not embody, either literally or equivalently, all the elements of any single claim in any of the Chens' patents.

201.   Therefore, Defendants' reports of infringement by Plaintiffs' products were wrongful and calculated to interfere with Plaintiffs' prospective economic relations  and gain an improper market advantage.

202.   Defendants failed to act with reasonable care when he engaged in wrongful conduct including the following:

a.   Lodged false reports of infringement to Amazon and others;

b.   Lodged false reports of patent ownership to Amazon and others; and

c.   Failed to inform Amazon and others to whom he lodged false reports that he is not the owner of the subject Chen patents and has no right to enforce such patents.

203.   Plaintiff's relationship with its customers has been disrupted because its customers have been prevented from selling Plaintiffs' wagons on Amazon's online sales platform and other platforms and are threatening to return to Plaintiffs all its folding wagons for a refund or credit.

204.   As a result, Plaintiff has been harmed by loss of sales revenue and loss of reputation with its customers.

205.  Defendants' conduct is the cause of Plaintiff's harm.

206.  Plaintiff seeks damages in an amount to be determined by the Court but in no case less than $250,000.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for a judgment against the Defendants as follows:

A.     For Count One, Two, and Three, a declaration that the '940 Patent, '206 Patent, and '311 Patent are invalid;

B.     For Count Four, an Order correcting the '686 Patent, and any derivative patent, to reflect that Horowitz is the true inventor and owner; or, in the alternative, a declaration that the '686 Patent is invalid;

C.     For Count Five, Six, Seven, Eight, Nine, Ten, Twelve, Fourteen, and Sixteen an Order holding Yishun Chen and Zhaosheng Chen jointly and severally liable liable for all Plaintiffs' damages in an amount to be determined at trial, but not less than $250,000, plus prejudgment interest and a permanent injunction enjoining Defendants and their agents, servants, employees, attorneys, successors and assigns, and all persons, firms and corporations acting in concert with them  from claiming that sellers of the Horowitz '154 Wagon are infringing the '940 Patent, '206 Patent, '311 Patent, and '686 Patent;

D.     For Count Five, Six, Seven, Nine, Eleven, Thirteen, Fifteen, and Sixteen an Order holding the Kevin Xia liable for all Plaintiffs' damages in an amount to be determined at trial, but not less than $250,000, plus prejudgment interest and a permanent injunction enjoining Defendants and their agents, servants, employees, attorneys, successors and assigns, and all persons, firms and corporations acting in concert with them  from claiming that sellers of the Horowitz '154 Wagon are infringing the '940 Patent, '206 Patent, '311 Patent, and '686 Patent;

E.     For all Counts, Plaintiffs' attorney fees and costs incurred; and

1    F.    For such other and further relief as the Court deems just and equitable.

2

3

4                              Respectfully submitted,

Dated: February 22, 2019

5                              CREATIVE OUTDOOR DISTRIBUTOR
                               USA, INC. and BRIAN HOROWITZ,
6                              Plaintiffs

7                    By:    /s/Marc C. Forsythe

8                           Marc Forsythe, Attorney for Plaintiffs
                            and Cross-Defendants
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# DEMAND FOR JURY TRIAL

2       Under Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiffs

3  demand a trial by jury of all issues triable to a jury.

4

5  Dated: February 22, 2019

6                                              /s/Marc C. Forsythe
                                               Marc Forsythe, Attorney for
7                                              Plaintiffs and Cross-Defendants

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 18101 Von Karman Avenue, Suite 1200, Irvine, CA 92612

A true and correct copy of the foregoing document entitled (*specify*): **THIRD AMENDED COMPLAINT; DEMAND FOR JURY TRIAL** will be served or was served **(a)** on the judge in chambers in the form and manner required by LR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) February 22, 2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Peter Joseph Diedrich** p.diedrich@mpglaw.com,d.dutra@mpglaw.com
- **Marc C Forsythe** mforsythe@goeforlaw.com,kmurphy@goeforlaw.com
- **Darrell W Gibby** Dgibby417@gmail.com
- **David S Lin** dlinlaw@sbcglobal.net,dlinlawoffice@att.net
- **MacSports Inc. d/b/a/ Mac Sports** p.diedrich@mpglaw.com
- **Tofasco of America, Inc.** p.diedrich@mpglaw.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) February 22, 2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) February 22, 2019, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

- The Honorable Andrew J. Guilford, USDC, 411 West Fourth Street, Santa Ana, CA 92701

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 22, 2019 | Kerry A. Murphy | /s/Kerry A. Murphy |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |